UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-00173-MOC-DCK

| | |
|---|---|
| **JOHN CATURANO,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )　　　　　ORDER |
| | ) |
| **ARMCHEM INTERNATIONAL CORP.,** | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), (Doc. No. 10). Having considered the motions and pleadings, the Court grants Defendant's motion to transfer venue.[1]

## I.     BACKGROUND

This is an employment contracts case. Plaintiff John Caturano is a citizen and resident of Buncombe County, North Carolina, and Defendant Armchem International Corporation ("Armchem") is a Florida corporation with its principal place of business in Broward County, Florida. Armchem manufactures, sells, and distributes cleaning supplies, maintenance products, and safety products throughout the United States, including in North Carolina.

In July 2016, Armchem and Caturano entered into discussions about Caturano working as a

---

[1] Also pending is Plaintiff's motion to dismiss Armchem's counterclaims. Because the Court is transferring this action to the Southern District of Florida, the Court will not adjudicate Plaintiff's pending motion, and the entire action, including the motion to dismiss, will be transferred.

-1-

National Sales Manager for Armchem in North Carolina.  In late July 2016, Caturano traveled to Armchem's headquarters in Broward County, Florida, where the parties finalized Caturano's employment terms.  From July 2016 until his resignation in December 2019, Caturano worked as Armchem's sales manager in North Carolina.

The core of this dispute is the nature of the parties' employment contract.  The parties disagree over whether a written employment agreement even exists and therefore whether a forum selection clause and noncompete agreement in that written contract are enforceable against Caturano.  Armchem alleges that, during Caturano's meeting at Armchem headquarters in 2016, Caturano signed an Employment Agreement ("Employment Agreement,"), and a Noncompetition, Nonsolicitation, and Confidentiality Agreement ("Noncompetition Agreement").  According to Armchem, Caturano initialed every page of both agreements. Furthermore, according to Armchem, Yanette Mantro, a Florida notary public, notarized the Noncompetition Agreement, and Nicole Marganelli, Armchem's Human Resources Director, witnessed the signing of both agreements.  Armchem has submitted a notarized version of the Noncompetition Agreement that appears to bear Caturano's signature, as well as the sworn declarations of both Ms. Mantro and Ms. Marganelli.  (Doc. No. 11-2: Decl. of Yanette Mantro; Doc. No. 11-3: Decl. of Nicole Marganelli).  Armchem has also submitted a sworn declaration of Armchem's chief executive officer, Andrew Brahms, who states that he attended the July 2016 meeting and that all sales managers hired by Armchem, including Caturano, were required to sign the Noncompetition Agreement as a condition of employment with Armchem.  (Doc. No. 11-4: Decl. of Andrew Brahms).

-2-

The non-compete clause in the Noncompetition Agreement provides, in part, that the

employee agrees:

> after termination or severance, whether for cause or no cause, from his or her
> position as an Employee of ARMCHEM for a period of two years not to compete,
> directly or indirectly, by engaging in a business or business venture which is
> identical, similar and/or substantially similar to the business of ARMCHEM
> within any territory or geographic region serviced by ARMCHEM, its employees
> or associates.

(Doc. No. 11-2 at p. 8: "Noncompetition, Nonsolicitation, and Confidentiality Agreement,"

attached to Decl. of Yanette Mantro).  The Noncompetition Agreement also includes choice of

law and choice of venue provisions, stating:

> Governing Law and Venue.  This Agreement shall be governed by and construed
> in accordance with the local laws of the State of Florida without reference to that
> state's rules regarding choice of law.  Any litigation arising hereunder shall be
> instituted, at the election of the Company, in the State or Federal Courts
> encompassing Broward County, Florida.  All Parties agree that venue shall be
> proper in Broward County, Florida for all such legal or equitable proceedings.

(Id. at p. 10).

> Employee herein expressly acknowledges and consents to personal jurisdiction in
> Florida with respect to any and all disputes arising from this Agreement ….
> Employee further hereby recognizes and consents that in the event of breach of
> the Agreement, he or she will be haled into court in Florida, and that the
> Agreement is enforceable by Florida courts.

(Id. at p. 9).

Caturano adamantly disagrees with Armchem's factual claims.  In fact, in his own sworn

declaration, he denies signing any written agreements.  (Doc. No. 16-1: Decl. of John Caturano).

According to Caturano, he had previously worked for Armchem as a National Sales Manager

from 2006 to 2015.  In 2016 Armchem's CEO Brahms contacted Caturano to see if he would

-3-

return to work for Armchem as a National Sales Manager. Caturano asserts he told Brahms that, as a condition of returning to work for Armchem, he would agree to be employed only as an independent contractor paid through his sole proprietorship. He also asserts that he refused to sign a noncompete clause with Armchem, stating that "I was personally quite adamant that I would not [return to Armchem] if it involved my signing a non-competition agreement in favor of Armchem." (Doc. No. 16-1 at ¶ 11). Caturano asserts that, after he advised Brahms of these terms, he travelled to Armchem's Florida headquarters to confirm their "handshake deal" without any written agreement. He asserts that he met with Armchem's entire sales manager team on July 23, 2016.

Caturano asserts that neither Marganelli nor Mantro attended the meeting, and he denies ever signing any written agreement. Specifically, he states in his sworn declaration, "At no time during this July 23, 2016, meeting did I sign an employment agreement with Armchem, or any type of contract containing a non-competition or other form of restrictive covenant." (Id. at ¶ 21). Caturano asserts that he first saw the Noncompetition Agreement only after leaving the company in 2019, but he asserts that the handwriting on the agreement is not his. (Id. at ¶ 23). In short, Caturano claims he never signed a non-competition agreement—or any other written agreement—related to his employment with Armchem.

Shortly after resigning his position at Armchem, Caturano went to work as a sales manager for Momar, Inc., a direct competitor of Armchem. Armchem claims that Caturano has violated the terms of the disputed Noncompetition Agreement by, among other things, soliciting employees from Armchem to work for Momar and otherwise using confidential

-4-

information he learned while at Armchem.

Armchem sent Caturano a cease and desist letter dated May 12, 2020, accusing him of violating the Noncompetition Agreement.  Caturano responded by filing an action for declaratory relief in the North Carolina Superior Court of Buncombe County on May 29, 2020, pursuant to N.C. GEN. STAT. § 1-253, in which he seeks a judgment that the Noncompetition Agreement is "void and unenforceable as a matter of law" because: (1) when he agreed to work for Armchem, he agreed to do so through his sole proprietorship, and therefore he was not an Armchem employee; (2) Armchem never paid him—it only paid his sole proprietorship; (3) Caturano never signed the Noncompetition Agreement; and (4) the Noncompetition Agreement is, in any event, unenforceable as unduly onerous, overly broad, and violates the law and public policy of North Carolina.  See (Doc. No. 1-1).

Armchem removed the case to this Court on July 6, 2020, based on diversity jurisdiction under 28 U.S.C. § 1332.  On July 13, 2020, Armchem filed its Motion to Transfer, Answer, and Counterclaims, seeking to have this action transferred to the Southern District of Florida. On August 12, 2020, Caturano filed his own motion to dismiss Armchem's counterclaims, and that motion is pending.  Both parties have responded to the respective motions.

## II.    STANDARD OF REVIEW

Armchem has moved to transfer this action based on the forum selection clause in the Noncompetition Agreement and, alternatively, under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses.  Because the parties dispute whether they actually ever agreed to litigate their claims in the Southern District of Florida—i.e., whether Caturano signed the written

-5-

agreement containing the forum selection clause—the Court will turn to whether a transfer of venue is appropriate under Section 1404(a). Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Under the plain language of Section 1404(a), the court must first consider whether the action could have been brought in the transferee district. If the answer is yes, the court then applies a balancing test and considers various factors in deciding whether transfer is appropriate. See Cohen v. ZL Techs., Inc., No. 3:14-CV-00377-FDW, 2015 WL 93732, at *2 (W.D.N.C. Jan. 7, 2015).

If venue in the transferee district is proper, the Court must then consider the following factors in deciding whether the matter should be transferred: (1) the plaintiff's initial choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view of the premises by the jury, if relevant; (6) the enforceability of a judgment, if obtained; (7) the relative advantages and obstacles to a fair trial; (8) other practical problems that make a trial easy, expeditious, and inexpensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of unnecessary problems with conflict of laws. Scholl v. Sagon RV Supercenter, LLC, 249 F.R.D. 230, 239 (W.D.N.C. 2008).

Unless the balancing of these factors weighs strongly in favor of the defendant, the plaintiff's choice of forum generally should not be disturbed. Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984). Moreover, the court must analyze the eleven factors based on quality, not just quantity. Cohen v. ZL Techs., Inc., 2015 WL 93732, at *2 (citing Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F. Supp. 93, 96 (W.D.N.C. 1990)). On a motion to transfer, the facts as alleged in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. Century Furniture, LLC v. C & C Imps., Inc., No. 1:07cv179, 2007 WL 2712955, at *2 (W.D.N.C. Sept. 14, 2007). Finally, "in deciding a motion to transfer venue, the Court focuses on the claims made at the time of filing and not on counterclaims brought by the party seeking transfer." RWIP, LLC v. Grand Image, Ltd., No. 1:11-CV-01855-MHS, 2012 WL 13008640, at *3 (N.D. Ga. May 21, 2012) (citing Hoffman v. Blaski, 363 U.S. 335, 344 (1960)).

## III. DISCUSSION

### A. Section 1404(a) Statutory Language—Whether this Action Could Have Been Brought in the Southern District of Florida

Under the plaintiff language of Section 1404(a), the Court must first consider whether this action could have been brought in the Southern District of Florida. Since Armchem is a citizen and resident of Broward County, Florida, this case could have been brought in the Southern District of Florida. 28 U.S.C. § 1391(c) (a corporation defendant is a resident in any judicial district in which it is subject to the court's personal jurisdiction). Having determined that venue is proper in the Southern District of Florida, this Court will now consider the eleven factors listed

-7-

above.

**B. Balancing Test—Application of the Relevant Factors in Determining Transfer under Section 1404(a)**

**1. Initial Choice of Forum**

As noted, Caturano initially chose the North Carolina Superior Court of Buncombe County as his preferred forum since he filed this action there. Although the court ordinarily gives the plaintiff's choice of forum considerable weight, that weight is diminished when the conduct giving rise to the complaint did not occur in the forum. Hames v. Morton Salt, Inc., 3:11cv570-MOC-DSC, 2012 WL 1247201, at *2 (W.D.N.C. Apr. 13, 2012) (citing Parham v. Weave Corp., 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004)). Indeed, the weight given to the plaintiff's choice of forum is proportionate to the relation between the forum and the cause of action. Parham, 323 F. Supp. 2d at 674. Further, the plaintiff's choice of forum is accorded somewhat less weight in a removal action. First Fin. Bank v. CS Assets, LLC, No. CIV.A. 08-0731WSM, 2009 WL 1211360, at *6 (S.D. Ala. May 4, 2009); Sky Techs. Partners, LLC v. Midwest Research, 125 F. Supp. 2d 286, 292 (S.D. Ohio 2000).

Here, Caturano's cause of action bears little relation to North Carolina. That is, his claim for declaratory relief does not ask the Court to determine whether he violated the Noncompetition Agreement based on his conduct in North Carolina.[2] Rather, he is asking the

---

[2] Although Armchem's counterclaims involve conduct that occurred in North Carolina, this has no relevance to Armchem's motion to transfer. As noted, "in deciding a motion to transfer venue, the Court focuses on the claims made at the time of filing and not on counterclaims brought by the party seeking transfer." RWIP, LLC v. Grand Image, Ltd., 2012 WL 13008640, at *3.

-8-

Court to enter a judgment "declaring that the Noncompetition Agreement purportedly between Caturano and Armchem is void and unenforceable as a matter of law." (Doc. No. 1-1, "Prayer for Relief," ¶ (a)). This claim calls on the Court to evaluate the agreement that Caturano entered into in Florida with a Florida corporation, and which Armchem argues was entered into in front of witnesses and attested to by a Florida notary public. Moreover, although Caturano states in his declaration that he was living in Asheville, North Carolina, at the time in question, he filled out an IRS Form W-9 indicating he was a Florida resident at that time. (Doc. No. 3-3, Ex. C, ("IRS Form W-9").

Caturano's claim for declaratory relief also requires an interpretation of Florida law. For questions of contract formation and validity, federal courts apply state law. Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 179 (4th Cir. 2013). Given that this action is in this Court based on diversity jurisdiction and the validity of the forum selection clause is disputed, the Court must apply the choice of law rules of North Carolina, the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under North Carolina choice of law rules for claims sounding in contract, the governing law is determined by lex loci contractus, or the law of the place where the contract was formed. Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). The place where a contract is formed is determined by the "place at which the last act was done by either of the parties essential to a meeting of the minds." Key Motorsports, Inc. v. Speedvision Network, LLC, 40 F. Supp. 2d 344, 347 (M.D.N.C. 1999) (quoting Fast v. Gulley, 271 N.C. 208, 212, 155 S.E.2d 507, 510 (1967)). Here, regardless of whether the parties' employment contact was oral (as Caturano contends), or written (as

-9-

Armchem contends), by Caturano's own allegations, the parties entered into the contract in Florida.[3]

In sum, all of the transactions involved in Caturano's claim for declaratory relief occurred in Florida, involve Florida witnesses, are made against a Florida corporation, and involve him representing (at least to the IRS) that he was a Florida resident at that time. Further, since the employment contract was entered into in Florida, Caturano's claim requires interpretation of Florida law. Moreover, because Caturano initially chose state court, rather than federal court, the Court affords somewhat less weight to Caturano's preferred forum. Given these considerations, the first factor weighs in favor of transfer to the Southern District of Florida.

**2.     The Residence of the Parties**

It is undisputed that Caturano is a resident of this district, and Armchem is a Florida

---

[3]  In response to the motion to transfer venue, Caturano now contends that the employment agreement was made over the phone while he was in North Carolina. However, he alleged as follows in his Complaint:

> 10. As negotiations over this arrangement progressed, in late July 2016, Caturano travelled to Armchem's headquarters in Florida to discuss his potential engagement by Armchem.
> 11. In an-person meeting in Florida on July 23, 2016, Caturano and Armchem's owner, Andy Brahms, orally agreed that Caturano would represent Armchem as a Sales Manager in the territory of North Carolina, acting through his sole proprietorship.
> 12. At no time during this July 23, 2016 meeting did Caturano sign any written contract commemorating his arrangement with Armchem; the arrangement was agreed to orally and was described as a "handshake deal." Multiple witnesses were present at this July 23, 2016 meeting.

(Doc. No. 1-1 at ¶¶ 10-12: Compl.) (emphases added).

-10-

corporation with its principal place of business in Florida. Because each party resides in a different state, this factor is neutral. E.g., Commercial Equip. Co. v. Barclay Furniture Co., 738 F. Supp. 974, 977 (W.D.N.C. 1990).

3. **The Relative Ease of Access of Proof and the Availability and Costs of Witnesses**

Next, as to the third and fourth factors—the relative ease of access or proof and the availability and costs of witnesses—traditionally, "[t]he convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer … One strong argument against transfer is that the original forum will be the most convenient for the witnesses. And when transfer will better serve the convenience of the witnesses, the motion under Section 1404(a) is more likely to be granted." 15 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3851 (4th ed.) (collecting cases). The party asserting witness inconvenience must proffer sufficient details respecting the witnesses and their potential testimony for the court to assess the materiality of evidence and the degree of inconvenience. Capital One Fin. Corp. v. Drive Fin. Servs., L.P., 434 F. Supp. 2d 367, 375–76 (E.D. Va. 2006).

Again, Caturano's claim turns on the question of contract formation, which primarily involves events that occurred during Caturano's meeting at Armchem's headquarters in Florida. The evidence to resolve these issues includes documents and personnel records in Armchem's possession in Florida, as well as the testimony of witnesses, three of whom are Florida residents—Yanette Mantro, the Florida notary public who purportedly notarized the

-11-

Noncompetition Agreement; Nichole Marganelli, Armchem's Human Resources Director, who purportedly witnessed the signing of both agreements; and Armchem's chief executive officer, Andrew Brahms. Besides himself, Caturano has identified two other witnesses, one of whom is a Florida resident, (Doc. No. 16-3: Denson Decl.), and one of whom is a Georgia resident, (Doc. No. 16-3: Kempton Decl.). Accordingly, Florida is the preferred venue to compel the non-party witnesses. So far, neither party has identified a non-party witness who is a North Carolina resident. In fact, the only non-party witness identified so far who does not live in Florida lives in Georgia. The Georgia resident's attendance at trial would be equally difficult to compel in either Florida or North Carolina.

Further, resolving the issue of the terms of the contract between the parties will also involve evidence in the form of documents that Armchem keeps at its headquarters, such as Caturano's personnel file, his payment records, and any other documents involved in recruiting and retaining him as an employee. Because most of the anticipated non-party witnesses and the documents involved in the litigation of Caturano's claim will be in Florida, these two factors favor transfer.

4. **View of the Premises by the Jury, Enforceability of a Judgment, and Relative Advantages/Obstacles to Fair Trial**

The Court considers the next three factors—whether transfer affords the possibility of a view of the premises by the jury, if relevant; allows for the enforceability of a judgment, if obtained; and balances the relative advantages and obstacles to a fair trial. First, as to whether the jury can view the premises, this factor is not relevant since the issue here involves only a

-12-

contract dispute. As to the last two of these three factors, it is clear that the Southern District of Florida, as a sister federal district court, can enforce judgments and affords the parties the possibility of a jury trial, which would favor transfer on both factors. As to any relative obstacles or advantages for a fair trial, it is not necessary to probe as to whether this district or the Southern District of Florida would provide one side or the other any "home field" advantage, as any advantage would go both ways. See Rice v. Bellsouth Adver. & Pub. Corp., 240 F. Supp. 2d 526, 530 (W.D.N.C. 2002). The Court therefore finds that these factors are neutral.

**5.      Other practical problems that make a trial easy, expeditious, and inexpensive.**

As to the next factor—practical problems that makes a trial easy, expeditious, and inexpensive, motions to transfer are not to be granted merely to shift the inconvenience from one party to another. Jim Crockett Promotions, Inc., 751 F. Supp. at 95. Here, either forum presents practical problems such as travel and accommodations for the parties and their counsel. See Rice, 240 F. Supp. 2d at 530. Even so, the clear focus of this case involves activities, evidence, and witnesses in the Southern District of Florida. Most of the witnesses in this action would have to travel from Florida to North Carolina. So far, the only North Carolina resident identified as a potential witness is Caturano.

The Court further notes that if the forum selection clause is subsequently deemed to be valid, then this action would have to be transferred to the Southern District of Florida. If the Court wishes to cure these problems by transferring at a later time, then this will increase the time, expense, and delay of the litigation. On the other hand, if the case is transferred now but it

-13-

turns out that the venue provision is not valid, it would have been transferred as a matter of this Court's discretion. Thus, this consideration weighs in favor of transfer.[4]

Finally, Caturano argues that none of the parties' attorneys are licensed in Florida and, therefore, transferring the action to Florida, where the parties will have to engage local counsel, will result in additional delay and expense for the parties. The inconvenience caused to the parties by having to retain local counsel is given little weight on a motion to transfer. Chicago, R. I. & Pac. R.R. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955); Mims v. Proctor & Gamble Distrib. Co., 257 F. Supp. 648, 657 (D.S.C. 1966).

In sum, in assessing practical problems that make a trial easy, expeditious, and inexpensive, the Court finds that this factor weighs significantly in favor of transfer.

### 6.    Administrative Difficulty of Court Congestion

As for court congestion, statistics show that, as of June 30, 2020, the Southern District of Florida has had more than five times the number of filings this Court has had and similarly, that this Court has far fewer currently pending cases than the Southern District of Florida. (Doc. No. 11, Ex. 5 ("Case Management Stats")). In determining court congestion, however, the Court

---

[4]  The Court notes that, in arguing for transfer, Armchem cites to the Supreme Court's ruling that a "[a] proper application of § 1404(a) requires that a forum-selection clause be "given controlling weight in all but the most exceptional cases."" Atl. Marine Constr. Co. v. United States Dist. Court, 571 U.S. 49, 59–60 (2013). The Court does not apply this rule, however, as there is a dispute as to whether Caturano agreed to be bound by a forum selection clause in the first instance. Thus, the Court's decision here does not rest on its assumption that a forum selection clause exists and is enforceable. Rather, the Court simply accepts that it is possible that a court may hold, at some point, that the forum selection clause was part of the parties' agreement. Thus, it makes practical sense for this Court to go ahead and transfer the action now, rather than potentially later.

-14-

must also consider the number of judges on a court, the court's resources, infrastructure, and the nature of the cases constituting the court's caseload. Those qualities can be determined with reference to the court's median time from filing to disposition. In this district, the median time from filing to disposition for civil cases is 8.7 months. Id. The time from filing to trial in civil cases for 2019 was 21.5 months. Id. In the Southern District of Florida, the median time from filing to disposition for civil cases is 3.7 months and the median time from filing to trial is 16 months. Id. These metrics show more court congestion in this district. Accordingly, this factor favors transfer.

### 7. Interest in Localized Controversies Settled at Home

As to the interest in having localized controversies settled at home, the center of gravity in this case is Florida, as this is where the parties entered into the employment contract and where several witnesses contend that they witnessed the signing of the non-compete and employment agreement at issue in this case. Caturano argues that North Carolina has the greater local interest in the controversy because it involves a North Carolina resident and employee. He further argues that, assuming the written contract is found to be valid, North Carolina has a significant interest in whether a restrictive covenant in a non-competition agreement is too onerous to be enforced under North Carolina public policy. That argument, however, is based on the assumption that this Court should consider Armchem's counterclaims but, as noted, those counterclaims are irrelevant for purposes of this transfer motion. The only controversy for the Court's consideration is the nature of the agreement that the parties entered into when Caturano was at Armchem's headquarters in Florida. Because that controversy presents questions of

-15-

contract law that the State of Florida has an interest in seeing correctly interpreted and enforced, this factor favors transfer to that venue.

### 8. Avoidance of Conflict of Laws Issues

Next, as to conflict of laws rules, the Court must apply the choice of law of the forum state in which it sits.  Klaxon, 313 U.S. at 496.  Under North Carolina choice of law rules, for claims sounding in contract, the governing law is determined by lex loci contractus, or the law of the place where the contract was formed.  Fortune Ins., 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000).  If the forum were Florida and that court applied Florida choice of law rules, the outcome would be the same.  Jemco, Inc. v. United Parcel Serv., Inc., 400 So. 2d 499, 500–01 (Fla. Dist. Ct. App. 1981) (citations omitted).  Since a transfer to Florida would not create an unnecessary problem with conflicts of laws, this factor is neutral.

## CONCLUSION

In sum, in determining whether to transfer this action under Section 1404(a), the Court has considered the relevant factors both quantitively and qualitatively, and the Court finds that the factors overall favor transfer of venue to the Southern District of Florida.  The nonparty witnesses most critical to the issue of contract formation are in Florida.  Furthermore, because Florida law applies to the claims sounding in contract, the Florida courts have a greater interest in handling this litigation.  A transfer to the Southern District of Florida now will also avoid the problems of increased time, expense, delay, and prejudice that will result if a court finds the choice of venue provision in the written agreement is enforceable.

For the reasons stated herein, the Court grants Defendant's motion to transfer this action

-16-

to the Southern District of Florida.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

1) Defendant's Motion to Transfer Venue (Doc. No. 10) is **GRANTED**.

2) This action is hereby **TRANSFERRED** to the Southern District of Florida.

Signed: October 13, 2020

Max O. Cogburn Jr.
United States District Judge